933 So.2d 1048 (2006)
Joe Henry COTTON, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-02161-COA.
Court of Appeals of Mississippi.
July 18, 2006.
*1049 John D. Watson, Southhaven, attorney for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
Before LEE, P.J., SOUTHWICK and ISHEE, JJ.
LEE, P.J., for the Court.

FACTS AND PROCEDURAL HISTORY
¶ 1. Between 9:30 p.m. and 10:00 p.m. on April 16, 2004, Sheila Bridges was shot multiple times as a she sat in her car at the Commons Apartment in Walls. Michael Dye, who lived in an apartment complex adjacent to the Commons, witnessed the shooting as he stood smoking a cigarette in the balcony of his apartment. Dye testified that he saw a man run from behind a building towards Bridges's car and fire multiple shots into her windshield. Dye testified that he saw the man run further into the complex after the shooting.
¶ 2. Katherine Logan lived at the Commons and testified that she heard the shots as well. Three to four minutes after hearing the shots, she went out on her porch and observed a black male in a bi-colored, horizontally-striped shirt. Minda Griffin was visiting George Miller at the Commons that evening, and both Miller and Griffin testified that they heard shots. Both witnessed a man jog towards Miller's building and throw something into one of the complex's ponds. Both Miller and Griffin testified that they heard the object splash as it hit the water. The man then ran back towards the building where Griffin and Miller stood, raising his empty hands as he ran below the balcony where they stood. Griffin was able to identify *1050 Joe Henry Cotton, the father of Bridges's daughter, from a photographic lineup; however, at trial she testified that Cotton was not the man she saw running that night. Miller identified Cotton in a photographic lineup, and at trial he testified that Cotton was the man he saw that evening.
¶ 3. The police discovered a .357 magnum pistol in the area which Miller and Griffin indicated Cotton had thrown an unidentified object. The serial number on the gun matched the serial number on a gun Cotton had retrieved from a pawn shop days prior to the shooting.
¶ 4. Cotton was indicted for Bridges's murder and was convicted by a jury in the Desoto County Circuit Court on September 29, 2004. It is from this conviction that he appeals, arguing the following errors: (1) the trial court erred in rejecting Cotton's manslaughter instruction; (2) the trial court erred in admitting pictures of the victim into evidence; and (3) the trial court erred in denying Cotton's motion for a directed verdict and motion for a new trial.
¶ 5. Finding no error, we affirm.

I. DID THE TRIAL COURT ERR IN REJECTING COTTON'S MANSLAUGHTER INSTRUCTION?
¶ 6. When considering challenges to jury instructions, our standard of review requires the appellate court to avoid considering instructions in isolation, but rather the court should consider them as a whole for determining whether the jury was properly instructed. Comby v. State, 901 So.2d 1282, 1288(¶ 15) (Miss.Ct.App. 2004). "Defects in specific instructions do not require reversal `where all instructions taken as a whole fairlyalthough not perfectlyannounce the applicable primary rules of law.'" Burton ex rel. Bradford v. Barnett, 615 So.2d 580, 583 (Miss.1993) (citations omitted).
¶ 7. Cotton argues that the trial court erroneously rejected his proposed manslaughter instruction; however, while a defendant is entitled to have the jury instructed regarding his theory of the case, the court may properly refuse an instruction if it states the law incorrectly, is covered elsewhere in the instructions, or is without an evidentiary foundation. Heidel v. State, 587 So.2d 835, 842 (Miss.1991) (citations omitted). The State argues that the trial court properly rejected the proposed instruction because there was no evidence to support an instruction on manslaughter. We agree.
¶ 8. Mississippi Code Ann Section 97-3-35 (Rev.2000) provides that "[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner; or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter." Nothing in the record indicates that Cotton killed Bridges in the heat of passion. Indeed, Cotton's testimony was that he did not see, much less shoot, Bridges that night. Cotton further testified that he last saw Bridges three days prior to her death and that the meeting was amicable. Cotton testified that he helped Bridges with the oil and water levels in her car and that the two discussed buying their daughter some clothes. We further note that the record is devoid of any evidence indicating that their relationship was contentious. Nothing in Cotton's testimony or the testimony of the other witnesses supports an instruction that Cotton killed Bridges in the heat of passion or in self-defense. This issue is without merit.

II. DID THE TRIAL COURT ERR IN ADMITTING PICTURES OF THE VICTIM INTO EVIDENCE?
¶ 9. In reviewing the admission of pictures depicting gruesome crime *1051 scenes, we apply the familiar abuse of discretion standard. Chatman v. State, 761 So.2d 851, 854(¶ 11) (Miss.2000).
¶ 10. Cotton argues that the court erred in admitting photographs of the victim into evidence. Cotton does not explicitly indicate which photographs are objectionable, but we deduce that his argument applies to all of the pictures containing images of Bridges after the shooting, specifically Exhibits 12, 15, 20, 25, 28, 29, and 30. Exhibits 12, 20, and 25 are photographs taken from the hood of Bridges's vehicle while Bridges's body was still in the car, showing the six bullet holes in the windshield. Exhibits 15, 28, 29, and 30 are pictures of the bullets' entry points, including Bridges's leg and chest. Cotton argues that the pictures were not relevant to the issue of whether Cotton was guilty of murder by deliberate design. Cotton also argues that even if the pictures were relevant, the prejudicial value outweighs any probative value.
¶ 11. The admissibility of photographs rests within the discretion of the trial court. Walters v. State, 720 So.2d 856, 861(¶ 12) (Miss.1998); Brown v. State, 690 So.2d 276, 289 (Miss.1996); Shabazz v. State, 729 So.2d 813, 823(¶ 28) (Miss.Ct. App.1998). Reversal is only proper when it is clear the court abused its discretion. Chatman, 761 So.2d at 854(¶ 11). We disagree that the photographs are overly gruesome. While the pictures depict the deceased, the entry wounds are small and the amount of blood is minimal. Additionally, while Exhibits 12, 20 and 25 contain images of Bridges in the vehicle, her face and body are obscured by the fragmented windshield.
¶ 12. Photographs have evidentiary value where they (1) aid in describing the circumstances of the killing and the corpus delicti, (2) describe the location of the body and cause of death, (3) and supplement or clarify witness testimony. Westbrook v. State, 658 So.2d 847, 849 (Miss.1995) (internal citations omitted). The photographs sub judice fulfill all three of these criteria. The pictures depict the circumstances of the shooting, the location of the body and the cause of death, specifically that Bridges was killed while sitting in her car. The pictures also supplement and clarify the testimony of the crime-scene investigators regarding the location of the wounds, the trajectory of the bullets, and the number of the bullets. The pictures further supplement the testimony regarding the cause and manner of death.
¶ 13. Mississippi Code Annotated Section 97-3-19(1)(a) (Rev.2000) provides, "The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases: (a) When done with deliberate design to effect the death of the person killed, or of any human being...." The number of shots, the number of wounds, and the concentration of the bullet holes on the driver's side of the vehicle are all relevant as to whether Cotton killed Bridges under Section 97-3-19(1)(a). We find this issue to be without merit.

III. DID THE TRIAL COURT ERR IN DENYING COTTON'S MOTION FOR A DIRECTED VERDICT AND MOTION FOR A NEW TRIAL?
¶ 14. "The standard of review for a denial of a directed verdict, peremptory instruction and a JNOV are identical." Hawthorne v. State, 835 So.2d 14, 21(¶ 31) (Miss.2003). These motions challenge the legal sufficiency of the evidence, and as such we review the ruling on the last occasion the challenge was made, in this instance the motion for a JNOV. Id. (citing McClain v. State, 625 So.2d 774, 778 (Miss. 1993)). A motion for a new trial challenges *1052 the weight of the evidence, and a reversal is only appropriate if the trial court abused its discretion in denying the motion for a new trial. Id. at (¶ 31). We must review the evidence in a light most favorable to the jury verdict, giving the State "the benefit of all favorable inferences that may reasonably be drawn from the evidence." McFee v. State, 511 So.2d 130, 133 (Miss.1987).
¶ 15. The evidence of Cotton's guilt is overwhelming, notwithstanding Griffin's testimony that Cotton was not the man she saw run towards the pond and dispose of the gun. Although Cotton claimed to be out of town, the vehicle Cotton regularly borrowed from Leroy Thomas, and had borrowed that evening, was found at the Commons the night of the shooting. Byron McIntire from the Mississippi Crime Laboratory testified that the bullets retrieved from Bridges's body were fired from a gun with the same serial number as the gun Cotton had retrieved from the pawn shop two days prior to the shooting. The gun bearing this serial number was found in the section of the pond where Miller and Griffin testified they saw a man toss an unidentified object. Miller identified Cotton as the man he saw running from the direction of the shooting and toss an object into the pond. Additionally, Andre Nagoski, head of the latent prints division at the Mississippi Crime Laboratory, testified that the palm print from the hood of Bridges's car matched Cotton's left hand print. Dye, who witnessed the shooting, testified that the shooter placed his hand on the hood of Bridges's car as he fired into the windshield. The evidence of Cotton's guilt is overwhelming. This issue is without merit.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
KING, C.J., MYERS, P.J., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.